is Lovegrove v. Ocwen Home Loans, but take your time to get ready. And then, Mr. Bowman, you may come up when you're all ready. Is that Ocwen or Oswin? Ocwen. Ocwen. Yes, sir. Mr. Bowman, when you're ready. May it please the Court. My name's Gary Bowman. I represent Thomas Lovegrove. First thing I'd like to do is reiterate some of the facts of the case that are important to the decision and may perhaps were lost in the briefs. One of the most important facts in the case is that Mr. Lovegrove received a discharge in bankruptcy in 2011, then three years elapsed before the events that are involved in this case took place. Mr. Lovegrove alleges that in 2014, in 2013 and 2014, that Ocwen violated the Fair Debt Collection Practices Act by trying to collect the discharge debt that was discharged back in 2011. So the bankruptcy case was closed back in 2011. It had been closed for years by the time the events that resulted in this case arose. So that's an important fact. Another important fact is there's a dispute. It's alluded to in the briefs and it's not necessary for decision here, but there is a dispute as to who owns this note. And there's still litigation going on over that. So Mr. Lovegrove disputed the debt that Ocwen was trying to collect. Ocwen was the servicer for Bank of America. Mr. Lovegrove alleged and still alleges in other litigation in district court that Bank of America didn't own the note at the time that Ocwen was trying to collect it. So those are two facts. Would you say that distinction doesn't matter here? I don't think that, I think the fact that there was a dispute may matter to your analysis. What the dispute was, I don't think that that's particularly important to the analysis here. But there was a note or mortgage that was owned by this person? Yes, sir. That's right. And Mr. Lovegrove last made payment in what, 2009? Is that correct? Yes, ma'am. And he still is there even today. That's right. And that's why I started with these facts. The problem is that Bank of America transferred the note to a third party. And then that third party has owned the note, but Bank of America until recently had treated itself as still owning the note and hired servicers to collect the note even though somebody else owned the note. That other entity that owned the note is not trying to collect the note. So that's the underlying problem here. But, of course, this case is about the Fair Debt Collection Practices Act and the action that Ocwen took to collect the note even though the debt was discharged. If we were to see the communications as not an effort to collect the debt, there's no conflict with the Bankruptcy Code at all, is there? If we were to see these communications as something other than an effort to collect the debt, then do you have a claim, maybe the reporting, somehow tied to the Do you have any claim? No, sir. This case is predicated on the FDCPA being violated. By these communications? Yes, sir. That's right. Now, there's a circuit split, and that circuit split is fractured a couple of ways. And one of the main things I want to do in oral argument today is to point the Court's attention to the way the circuit split is fractured. Because reading the cases at first glance, some of the cases seem to be on this issue, but they're not really on this issue. Well, how are we to deal with the fact that in the letter, we can go through them, but in a letter, for instance, for example, however, if this debt, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect the debt. What are we to do with that language, under your view? Yes, sir. As I indicated, the debt was discharged. After the bankruptcy, Lovegrove did not begin making payments or make any action towards making payments or express any interest in making payments. And then AQUIN, when it became servicer, it sent a letter that had a section in it called consequences of foreclosure. And it did have that disclaimer at the bottom of it. Right. But on top of that disclaimer, which are very small letters, in the big letters that are at the top of the letter, it says consequences of foreclosure, and it listed three false consequences of foreclosure. One consequence of foreclosure is it says that you could be liable for the deficiency liability. It went into great detail about that. Another is it says there would be tax ramifications, that if you're liable for the deficiency liability and you don't pay it, then there will be tax ramifications, without going into the details, the tax ramifications during the brief. That's completely false because the provision of the bankruptcy code provides it. Well, this to me, it looks like it may be criticized as a short business practice. I'm not saying whether I like it or not. I don't really like it, I'll tell you. But the question is, is it an effort to collect the debt? And it seems to say in the letter that if you've been discharged, the debt has been discharged through bankruptcy, which you say that it has, the chronology you just gave us and the facts of the case, this communication is not intended as and does not constitute an attempt to collect the debt. Well, of course, the standard, which this Court has adopted, I mean, which is universally adopted, is the least sophisticated consumer standard. Right. So the question is whether the least sophisticated consumer read. Well, I'm just asking you, if you read that, then don't you have to tell us how, if you read that, that you would think this is an attempt to collect the debt if you've been through bankruptcy? The least sophisticated consumer, I think it's fair to say that they can read. Now, they may not be able to do much beyond that. Well, they know what a discharge in bankruptcy is. Yes, sir, they do. Okay. So those are the two things, right? Those are two things. They can read. That's right. And they know when they've gotten a discharge. That's right. And I'd say that those two things, that the least sophisticated consumer ought to know that. I mean, I'll concede that. Okay. But what the least sophisticated consumer doesn't know, in fact, what judges don't know, I mean, I would submit, a lot of sophisticated consumers don't know. Be careful. Be very careful. Right, of course. But one of the things that they don't know is that there are or could be tax ramifications if there's a deficiency on after a discharge in bankruptcy. People don't know that. You'd have to go to the Internal Revenue Code, I think 26 U.S.C. 108A1, to look at the tax ramifications of bankruptcy relating to this. Another thing. Tax ramifications changes that language. We already established that the person, the least sophisticated person, knows the discharge in bankruptcy and can read. And those words say it's not an attempt to collect the debt. The least sophisticated consumer is expecting that the tax policy changes that statement? The least sophisticated consumer, having gotten a discharge in bankruptcy, and knowing, if you impute to them that they know what a discharge in bankruptcy is, and knowing that they can reaffirm the debt, they can voluntarily make payments on the debt. Under your argument, then, if that statement had been at the top of the letter in letters bold, black, and inch high, it wouldn't matter to your argument, would it? That's right. It wouldn't have made any difference because the things that they're describing as consequences of foreclosure are so involved, the least sophisticated consumer, even a sophisticated consumer, wouldn't know whether these were true statements. How much is the note on the mortgage in this case? Is that correct? A million two.  A million two hundred thousand. So the statements that are in the letter, the consequences of foreclosure letter, Joint Appendix 151, those statements are just plain false. Now, a debtor after bankruptcy can reaffirm the debt, they can voluntarily make payments on the debt, they're entitled under state law even after bankruptcy to redeem the debt. I don't remember. Do you have a claim for fraud or anything like that? No, sir. You don't have a claim for fraud or something like that? If somebody deals with you in a business dealing and makes misrepresentations to you? Well, no, because the fraud claim would require, I think, that you relied on it or that you were damaged in some way because the claim, the FDCPA may impose a strict liability on the debtor. I know that, but I'm not talking about any other claim you might have for these misstatements, intentional misstatements. Well, with all due respect, I don't think we would have a fraud claim on these facts, but in any event, we didn't make a fraud claim. The FDCPA, because it imposes strict liability in our view, is the best claim. But Ocwen sent these false statements to Lovegrove, and the standard, in addition to being the least sophisticated consumer standard, the standard as to whether it's a communication in connection with the debt is whether the statement is, its animating purpose is to induce payment of the debt. And these statements sent to Mr. Lovegrove after bankruptcy saying that if you don't pay this debt and there's a foreclosure, all these bad things are going to happen to you, and the least sophisticated consumer, in fact, a sophisticated consumer, not knowing that those things will not happen to you, they will think that they will happen to you. And so even after bankruptcy, so even after the, even though they have this disclaimer at the bottom of their letter, they're sending these false consequences of foreclosure indicating that you can pay and you ought to pay. Even the most sophisticated consumer who has a million-dollar mortgage on his home gets to take advantage of some argument that the least sophisticated person wouldn't understand this? Well, no one would understand it. Respectfully, the district judge even really didn't understand it. Well, I don't know if he understood it or not, and I don't know if the district judge lives in a home with a million-dollar mortgage. I don't know that. Well, I hope he does. But this person lives in a home with a million-dollar mortgage. He's my neighbor, so I hope that his property values are somewhere that high, but I don't think they are. Are you telling us, quote, you live in a home with a million-dollar mortgage? No, I don't think his house or my house are like that. What does the least sophisticated consumer or borrower know about foreclosure? I don't. Especially foreclosure after a discharge. Right. I think that's the more pertinent question, with all due respect. And what I think a least sophisticated consumer or what a typical debtor in bankruptcy, which may be different, but I'd say what the typical debtor in bankruptcy knows after he's gotten a discharge is that his mortgage rides through the bankruptcy and that as long as he continues to make payments, that they can't foreclose. He also knows that he can pay off the mortgage and they can't foreclose. So he at least knows those two things because typically, I mean, what we would argue is that we can present evidence at the district court that would establish that most consumers know that. But if it is strictly an objective standard for the judge to determine what the least sophisticated consumer knows, we think that that's what a judge should conclude that the least sophisticated consumer should know, that a mortgage typically rides through bankruptcy, that even if the debtor makes payments, if the debtor doesn't make payments, they at least have the right to redeem the debt by paying it off, like by refinancing the mortgage so that they could pay it off. And that's not unreasonable because after you come out of a bankruptcy, it's true, your credit is somewhat damaged by the bankruptcy. On the other hand, your credit may be less damaged after the bankruptcy than it was before the bankruptcy because you've just dumped all of this debt. Somewhat damaged after bankruptcy? Yes, sir. And default on a $1 million mortgage? Yes, sir. I think that, again, it's a matter of what the least sophisticated consumer would know. I don't think many people falling into the category of the least sophisticated consumer, as Judge Schitt was suggesting, I think that's a null set, I think. What doesn't intersect? There is no person in the category of least sophisticated consumer who's going to come out of a bankruptcy with a $1.2 million mortgage who's then able to say, I'm better off now in my ability to hold on to my house. Well, respectfully, I disagree with that. You disagree? An example is I represented a man who was married to a movie star, and the movie star had a big divorce judgment against him, and then he bankrupted that in bankruptcy, and then after that he was much better off. That's an example of someone who was much better off. That's not the situation here. After the divorce or after the? After the bankruptcy. After the bankruptcy and getting rid of the movie star. He was much better off financially because he was a contractor and a developer who had the ability to generate a lot of income. So it wasn't a quadro. I mean, divorce judgments should be impossible to get rid of in bankruptcy. Well, this was a long time ago. Oh, it was before ERISA. It wasn't before ERISA, but I think there are circumstances where you can be better off after bankruptcy. But the point is that the least sophisticated consumer in this case getting these communications would think that they would be better off paying on this mortgage to avoid the foreclosure. And to the extent those statements are false, the statements about the consequences. Why wouldn't the least sophisticated consumer call and ask about this based on all this? Why wouldn't the least sophisticated consumer go, my lawyer told me I don't have to pay anything more, or I've been discharged. This letter tells me this isn't an attempt to get it, but I do have a mortgage on my house and I don't know what they can do with the mortgage. I better call and figure out what the heck my options are. Well, my first response is the least sophisticated consumer is not imputed to have the knowledge of a professional whom they would call. I mean, I don't think any of the cases say that. What professional does it take? Somebody says, you know, I owe so-and-so for a car repair, and it wasn't my car. I'd call and go, what the heck are you talking about? And I think my children would do the same thing. I'm going to stop. Can I answer? Sure. You answered that and then you had some other time. Sure. I do think that what typically happens is that the least sophisticated consumer asks their relatives and neighbors who are likely to give them wrong information when they should probably call a lawyer. But in any event I didn't say call a lawyer. I said call the people who sent you the letter. You know, you get this kind of letter, what would you If you read all of it, why wouldn't you go, what? What's going on? Ring, ring. What are you all talking about? If you did that, then what you would get is a call center talking to people who don't know any more about it than your friends and relatives would. And the call center people work for the company that sent you the false letter trying to get you to pay. So if you follow that analysis out, then it's likely that that's just going to continue the false representation. Then maybe that might help make the case for you then, maybe. Well, I just made that argument. I think it does help make our case. Yes, sir. All right. Thank you. Yes, sir. Thank you. Mr. Messenger? Is it Messenger? It is. All right. Glad to hear from you. Good morning, Your Honors. May it please the Court, my name is Brett Messenger, and I represent Aquan Loan Service in LLC, which is the defendant in this case that was granted summary judgment. I think just in regards to the facts, I just want to be very clear as to what the allegations are and what the district court was presented with. And as a first note is that there was only four communications which are the subject of this case, two of which were sent on October 5th. The first letter simply listed the amount that was due on the mortgage. Why doesn't any of that matter? Wouldn't one be enough if it's an improper effort? But I think in the context of what we're talking about is, you know, when we start to talk about the discharge injunction and also 524J, which allows the aquan to actually communicate in regard to the mortgage that secures the in-rem property, I think it's all relevant in regard to what those letters, what the nature of the letters are, and also what the letters said. Because in each of the letters, it had the language that you talked about, where it has the mini Miranda warning, which I think is what people call them, where it says, this is an attempt to collect a debt, blah, blah, blah. But it also says that if you've been – Well, I was prepared to say to you, it may not be a question of law, but it seems to me if you really wanted to be straightforward with people, I think your client might put this disclaimer in bigger letters, more prominent in the – in bigger letters, more prominently located in the communication. But as I've just found out, that doesn't matter in this case. It doesn't matter to the plaintiff's case at all. It really doesn't matter in this case. And not only that, but, you know, if you look at the industry as a whole. Why don't you talk about what he says does matter, and that is that what tax ramifications, delinquency judgments, those things matter and do look like it is being animated by an effort to collect a debt and trying to collect a debt. Yeah, so in one of the letters, and I think the district court actually properly picked up on this, is that if you look at the letters themselves, there's not – the only affirmative statement in the letter is that if you go through a foreclosure, that the foreclosure actually might affect your credit. And the district court actually, in its opinion, actually dealt with that issue and says, yeah, everybody knows that. If you go through a foreclosure, that does affect your credit adversely. The other things that were contained in the letters, especially, I mean, we spoke mostly about the tax consequences, actually use may. And it says, you know, when you go through a foreclosure, this may affect the tax consequences and stuff like that. And I don't think anybody who read that would say, okay, this is going to affect us, because it's really not an affirmative statement. And so there's a lot of reasons why there might be a tax consequence or not, and that's why the word may is in there. But I think the real issue in this case is, at least one of the issues in the case, is whether or not the FDCPA conflicts with the 524, the discharge injunction provision. Why does that – if this is not an effort to collect a debt, there isn't any conflict, is there? Yeah, that's exactly right. And that's sort of like the secondary thing, because we talked a lot about in our brief. Why is that secondary? If this is not an effort to collect a debt, is the bankruptcy code implicated in any way whatsoever? No, Your Honor. In fact, it says – But you want to talk about the bankruptcy code? Well, I think – I'm asking you, do you want to talk about it? You want to focus on it? You can if that's what you want to talk about. Let me do that if I have time. But I think in regard to just whether or not this was an attempt to collect a debt, the bankruptcy code – and I think this kind of goes hand-in-hand with it, but it actually allows the communication to be sent. So when we talk about whether or not it was collection activity or whether or not it was a violation of the discharge injunction, we haven't really talked about that yet. But certainly 524J allows you to communicate with the debtor in the ordinary course of business regarding an in-rate interest in the property. The courts have said that the communications are actually encouraged because where we have a situation here like Mr. Lovegrove, Mr. Lovegrove actually continues to live in this property and seems to want to keep this property. Here the letters actually themselves actually say that it's not an intent to collect a debt, especially if you – and it has the warning there in regard to if you're in bankruptcy, that it's not an attempt to collect a debt. The other argument that Mr. Lovegrove – It is correct, isn't it, that he could make payments without consequence? Yes. So what happens is there's a lot of things that the bankruptcy code actually helps you with if you go through bankruptcy. So here you heard my opposing counsel. Why don't you answer his question? Do you understand my question? Maybe I did not. If he just woke up one day and said, I'm going to send him $7,500, other than he's out the $7,500, is there any consequence to that regarding his future liability? No. No. Doesn't restart the debt? Doesn't reaffirm the debt? No. It takes a lot more than that, than a mere payment. Yes, and to your point is that here you have a person – I mean, the benefit of the bankruptcy, and I think it's to your point is that – which is a neighboring house isn't worth nearly $1.2 billion. What the benefit he got from the bankruptcy court was is that the excess, the personal liability under the note, that has been discharged. But certainly, if he wants to keep his home, he has to make payments. The worst thing that happens if he doesn't make payments is that he loses his home. But in regard to any deficiency judgment that may lie after that on the note, that's gone. So there's the benefit with you. And then – So if your client has sent you this notice in advance, and I'm not asking you whether anybody in your firm reviewed it or anything, but under these circumstances, that business probably shouldn't have been in there, right? The business about what? The business about foreclosure and the deficiency. Because there's no chance of a deficiency judgment here, right? Right, but it also says, if you look at the language on that same notice, I think it's 151 of the reproduced record. In that notice itself, it actually says that you may be liable for deficiency. It doesn't say you are liable for deficiency. I understand that. But under these facts, wouldn't it have made more sense just to leave it off? Because there's – Is there any possibility that this person could have ever been responsible for it? No, there's no possibility of that. So it was sort of surplusage. From your perspective, at most, it was surplusage. It's – Quota says it was fatally misleading and false. Well, and why wasn't it misleading? Because, I mean, even though, strictly speaking, you know, the foreclosure had not occurred, there's a suggestion here, isn't there, that if you don't pay the lender the deficiency liability, the IRS is going to be after you. That's actually not what it says, Your Honor. Well, it says the IRS may consider the unpaid debt to be part of your taxable income. Right. And why wouldn't the – and what troubles me is what would the least sophisticated consumer make of that? I mean, it sounds to me they would think, well, the IRS is going to be after me if I don't pay the deficiency liability. I think there's a difference between using the word will be and may be. And, you know, it's like when my kids ask me whether or not we're going to go to the movies tonight, I might say yes or I might say maybe. And even my kids who are not – Well, but the point is you used maybe in there to make them think that's a real possibility. That's why you used it. You didn't use it to draw the distinction between your kids may go to the movie and will go to the movie. It's just a point of saying we're putting you on notice. IRS may be after you. That's what you're doing it for. But I think when you take the whole letter as a whole, there is a mention in regard to the fact that if you're in bankruptcy that it's actually not an attempt to collect the debt. And I think that anybody who reads that, and I think the district court got it right, anybody who reads it, the unsophisticated consumer isn't someone who can't read, as Judge Davis said. And actually the court holds them to the standards that they can read. And even the unsophisticated consumer is still responsible to understand what it is that they're reading. And, you know, when I read those letters, I've got to tell you, I don't understand how anybody would understand it any other way. Well, I think you could read it and wonder what the hay jazz is going on. I think you could. And going, I'm getting an account statement that I owe money, and I'm getting this saying I owe money. That's why I say, what's going on? I don't think it's so clear. And quite frankly, let me say, I don't know if it makes any difference, I don't think your client wants it to be especially clear, quite frankly. But that's why I said it may be a short business practice. But the question is, does that disclaimer, how do we read all of that in light of the disclaimer? Well, I think the letters say what they say. Well, apparently they do. Yeah. But so in regard to that, I can reconcile it, and that is that the bankruptcy code allows you to send these type of notifications. It tells you what you're supposed to tell them in regard to when you send those type of notices, and that is that if you've been discharged in bankruptcy, that it's not an attempt to collect a debt. So the issue always goes back to whether or not it's an attempt to collect a debt, and the letter specifically says that it's not if you had been discharged in bankruptcy. If we look at that statement the IRS made, the print is so small right here I can't actually read it, but if in fact you just notify them, is that an effort to collect a debt under the law or is that just a notification which might push them to pay and the animation question comes into play? What about that? How do you deal with that? Yeah, so when you go back, so the guy's been discharged. Specifically, how do you deal? Answer my question. When the letter says this is if you've been in bankruptcy, this is not an attempt to collect a debt, but the comments above suggest, even with the may, that if you don't pay us some money, you may have the IRS on you. How do we factor those two together? Well, in regard to if we take the letter, you know, if you were to read the letter and every provision of that letter in regard to whether or not it's an attempt to collect a debt, there is a statement in there about the IRS, but I think that the language about the IRS is all tempered. It actually says that if you are liable for a deficiency is what it really says, then you may be subject to a tax consequence. When you look back at the warning in regard to when you've been discharged in bankruptcy, you still have that we're not trying to collect a debt, and I think all those things kind of run together. So, you know, because the bank, obviously, I think obviously to everybody, is that when you're looking at the IRS code, you have a taxable income if there's a forgivable debt. Pardon me. And here, when there is not the debt being collected, then I think it's very unusual to believe for a moment that you would be liable for the forgiveness of that debt. And I think the letter does make that clear. But does the – I'm sorry, go ahead. No, no, I'd rather have your question. Does the least sophisticated consumer doctrine or principle contemplate that the least sophisticated consumer will seek additional information? I think the – yes, to answer your question, I think yes. Do you actually have any case law that actually says that? No, but I think the letter actually says that you can call. Okay. So I think Judge Shett had talked about that. You know, when you get this, you know, you're going to talk to your neighbor. If you have any questions about this, feel free to give us a call. Exactly. Yeah. Yeah. And, you know, you know who your servicer is, and almost on every correspondence there's a phone number, I believe. So just in regard to – You'd be surprised these days, that's not always true. Yeah. Sometimes it's just a computer address. And if there is a phone number, it's almost impossible to find, just to know for the record. I don't know about this. But in regard to the letters themselves, I think that it's quite clear that the letter – because the way I understood the allegations is that sending the letters themselves is actually a violation. Do you think that for a letter like this, do you think that for commercial practices and for – to protect against liability, you would be obligated to, at least in a general way, suggest they talk to somebody about the tax consequences? I could see that. I'm just asking you. Yeah, I could see that. I mean – but I think the letter is well-worded for someone who doesn't, you know, doesn't have a tax – No, but I'm just talking about just a general warning to say you can pay this off, but if you won't have a deficiency, we won't charge you for that, but you better talk to somebody about the tax consequences, because you don't know what the IRS may or may not say about that. You have a good idea about it, but – I was wondering if you'd be fearful not to add something like that, because then there'd be a lawsuit. You encouraged them to pay off early, but didn't tell them about the ramifications of it. Well, I guess in hindsight or playing Monday morning quarterback, I guess we wouldn't be here today perhaps if we would have done something like that, so I can see how that could be helpful. Yeah, it might not take a Monday morning quarterback to know that, though. But in regard to, you know, here's the letters that we're dealing with that are claimed to be part of what's going on. Isn't it clear what's going on here is you want money. You want them to pay. You don't want money. Well, of course you do. At the beginning – Wait a second. Is your argument going to be prefaced on the fact that your client doesn't want money in this situation? Well – You have to hesitate. Judge, I'm not going to hesitate. But then say yes. I will say yes, but I'd like to say something because – Well, just let me say this, and the point is your client's trying to get money, so your client is wording the letter in the way that he thinks most effectively will get money. And he hopes and believes in a way that doesn't violate the law. Isn't that correct? Well, one of the things that my client – Is that not correct? It's not fully correct. Okay. Because one of the things that the client is trying to do, my client, Aquin, is trying to do is to get the money. But there's other things that they're trying to do, too. The other things they do, and, you know, not that this is in our brief, but – Give them tax advice. But – well, no. But one of the things I know, just because I represent this client in numerous jurisdictions, is that the other thing that we try to do is we try to keep people in their homes. So when we try to keep people in their homes – so one of the letters actually said there are alternatives to foreclosures, and one of them, and Aquin has been reported all over the newspaper as having the most loan modifications of any other servicer in the country. So, yes, the last result is – So if you'd like to get the money, you would just like to get the money while they stay in their home. Yeah. But you're not doing it. You're doing it because you want to get the money. But there's nothing wrong with that. I mean, if it's not – if it's within the law, why are you – why hedge? Just say, yes, we're trying to get as much money as we can within the law. But at the beginning of everything, someone put $1.3 million out on the street. Why do you feel like you have to justify the fact that your client wants to get paid money that's due your client? No, no, but I admitted to that, Judge Shedd. It took you a while. And I admitted that at the beginning of the day, you know, the whole purpose, you know, is to get the one point – part of the $1.3 million we'll never see at all that we put out on the street. But there's other considerations that are going on at the same time in regard to why we want you to pay the mortgage, right? And it's been publicized in regard to Auckland, especially in regard to that they try to work with the homeowners to try to keep them in their houses. What you need to do is maybe – why don't you just take 30 seconds or so or a minute and tell us why these communications in light of the disclaimer, in light of what else is said in the letter, these are not an effort to collect a debt that would put you under the statute. So I'll take that in stages. So the first one is that under the Bankruptcy Code, even post-discharge, we're allowed to communicate in the way that we did with the debtor under 524J. The second thing is that the letters actually contain the mini Miranda right, Miranda warning, that's required by the Fair Debt Collection Practices Act. That warning is then tempered by saying that if you've been discharged in bankruptcy, the letter should not be interpreted as an attempt to collect a debt, but it's for informational purposes only. Those, with all the other letters and we see all the other warnings is, is that there is no statement that we will seek a deficiency. Of course, even the least sophisticated consumer knows what they got in bankruptcy and that is a discharge of their personal liability. All the communications are tempered by saying what could happen in certain circumstances, but doesn't say it will happen. And in regard to the one thing that says affirmatively is that it will affect your credit, the district court correctly found that it will affect your credit if you do go through a foreclosure act, and I think that's the true statement. Do you have any questions? No. We don't have any further questions for you. Thank you, Your Honor. All right. Thank you very much. And of course, we've reviewed your brief as well. I know you have. Thank you. Mr. Bowman. Mr. Bowman. What I'd like to address is how the arguments that the court has suggested, what Mr. Messenger made, fits in the context of where the law is right now. Right now there's a circuit split on whether what Mr. Messenger just said, which essentially what he argued was that 524J of the Bankruptcy Code, which allows creditors and maybe debt collectors, persons, to send informational statements to people who've received a discharge in bankruptcy, if that section of the Bankruptcy Code precludes application of the Fair Debt Collection Practices Act. The Ninth Circuit in the Walls case in 2002 didn't address that issue precisely, but it did say that the Fair Debt Collection Practices Act is precluded by the Bankruptcy Code because the Bankruptcy Code essentially says something about this. That's, I think, a fair characterization of what the Ninth Circuit said. And since the Bankruptcy Code said something about it. No, they're saying a little more than that, aren't they? They're saying it occupies the field. They are, except the point that I'm trying to make is that they don't specifically say how it occupies the field. However, the Second Circuit in Garfield earlier this year, they made a much better analysis of how the Bankruptcy Code does not occupy this field, that 524J. Now, Garfield was a case against Ocwen, the same defendant as here, involving the same communications. And what the Second Circuit said in Garfield was that 524J that allows creditors or debt collectors to send informational statements after a bankruptcy, that doesn't mean that they have to, and it doesn't even imply that they should. But what the Second Circuit said is, quote, Ocwen can avoid violating both the FDCPA and the Bankruptcy Code simply by not attempting to collect the discharged debt. And once Ocwen, as a debt collector, tries to collect the discharged debt, it risks violation of both the cited provisions and the Bankruptcy Code. Either way, there isn't a conflict. So the Second Circuit — But it wasn't passing judgment on the precise language used. It was talking about the availability of a remedy. Yes, ma'am. Isn't that correct? That's right. And so the point that I'm trying to make on rebuttal is that this Court should follow the Second Circuit. Then the question becomes the question that the Court's been interested in, whether this was an attempt to collect the debt. Because that's dispositive. I think it is. Yes, sir. I think that's what comes down to. Didn't that issue come first? The first issue should be, is it a debt collection? It should. But as lawyers, we got sucked, both sides got sucked into the preclusion issue. We're trying to prevent that. Yes, sir. That's why you're judging the lawyers, I guess. But it seems to me analytically that, first of all, is this an effort to collect the debt? If it is, you don't have to address anything else. Or not. If it's not, you don't have to. If it is, maybe you have to address it. I think on the Ninth Circuit analysis, you wouldn't even get there. And that's why the Ninth Circuit's wrong. The Second Circuit is right. And apparently, y'all are already following the Second Circuit. The question is then whether this violates the FDCPA. And we submit that it does. And I think that the proof is in this putting at Joint Appendix 151 and 152. Page 1 is about how you can pay and avoid the consequences of a foreclosure. Page 2 is the consequences of the foreclosure that could occur. And it was sent to Lovegrove. And if he was the least sophisticated consumer, he would believe what it says. Now, to answer Judge Head's question about is there a phone number, yes, there is a phone number. But I think, I won't read it here at the oral argument, but I think in fairness, if the court reads what it says about the phone number, what's going to happen with the phone number is if you have questions about how you can pay, you can call this number. This is not a place to call, what does this mean? I thought I got a discharge in bankruptcy. You do agree that the least sophisticated consumer or borrower doctrine contemplates seeking additional information? No, sir. You don't? No, sir. Our position is that the least sophisticated consumer is not imputed to have any additional information. No, not that he has, but that she will seek. No, sir. I don't think the least sophisticated consumer. So do you have any case law one way or the other? No, sir. No, that's a, I think that's a very unique. So the least sophisticated consumer is supposed to get one of these communications and without talking to anybody or seeking additional information to figure out what you say lawyers and judges don't understand about deficiency judgments. The way it works, I believe, Your Honor, is the least sophisticated consumer. 75% chance that would be true. The least sophisticated consumer is not supposed to get confusing and misleading communications under the FDCPA. They're not supposed to have to be able to seek additional information because they're supposed to be provided true and clear information. And so? And so they didn't do that. The argument on the other side is that's exactly what they got. If, contrary to the facts, there hadn't been a discharge, then all that stuff about a deficiency judgment might well be true. Right? Yes, sir. That's true. So, okay. But I think it's, so I'll leave it with that. So we would ask the Court to reverse the district court. Okay. Thank you very much. We'll step down to greet counsel and go to the next argument.
judges: Dennis W. Shedd, Barbara Milano Keenan, Andre M. Davis